192 N.J. Super. 599 (1983)
471 A.2d 812
ORGO FARMS & GREENHOUSES, INC., A NEW JERSEY CORPORATION AND RICHARD J. BRUNELLI, PLAINTIFFS,
v.
TOWNSHIP OF COLTS NECK, A MUNICIPAL CORPORATION; AND ZONING BOARD OF ADJUSTMENT OF TOWNSHIP OF COLTS NECK, DEFENDANTS.
Superior Court of New Jersey, Law Division Monmouth County.
Decided October 7, 1983.
*601 David J. Frizell for plaintiff (Frizell & Pozycki attorneys).
Robert W. O'Hagan for defendant Township (Stout, O'Hagan & O'Hagan attorneys).
William R. Blair for defendant Zoning Board of Adjustment.
SERPENTELLI, J.S.C.
The issue before the Court is whether the location of the developer's property in an area designated as "limited growth" by the State Development Guide Plan (SDGP) precludes builder's relief as a matter of law. The question reaches the Court as a result of defendant's summary judgment motion to bar plaintiff from obtaining any builder's remedy even if plaintiff should succeed in proving that defendant's zoning ordinance violates the principles enunciated by our Supreme Court in Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel, 92 N.J. 158 (1983) (Mount Laurel II).
To place the issue in proper perspective, it is necessary to provide some historical background. In Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel, 67 N.J. 151 (1975) (Mount Laurel I), our Supreme Court held that a developing municipality violated the Constitution by excluding housing for lower income people and that it could satisfy that obligation by providing a realistic opportunity for the construction of its fair share of the present and prospective regional need for such housing. (at 174) This rule is now simply referred to as the Mount Laurel doctrine. Eight years later, in Mount Laurel II, the Supreme Court determined that unless a strong judicial hand was applied, Mount Laurel would not result in the housing which had been expected. Thus, the Court sought to strengthen, clarify and facilitate the application of the principles involved in the Mount Laurel doctrine. (at 199)
*602 Two of the many significant changes made by the Court in Mount Laurel I are at the heart of the issue involved in this case. First, the Court held that the existence of the municipal obligation to provide a realistic opportunity for a fair share of the region's present and prospective low and moderate income housing need, was no longer to be determined by whether or not a municipality was "developing". Instead, the obligation would extend to every municipality, any portion of which is designated by the State, through the SDGP, as a "growth area". (at 226-27) That duty has become known as the municipality's "fair share" obligation. Any municipality designated entirely as a limited growth area must provide only a realistic opportunity for affordable housing for its indigenous poor. The obligation to the indigenous poor in municipalities with designations other than growth or limited growth, is not relevant here. (at 243-46) The classifications of growth and limited growth emanate from the SDGP which divides the State into six basic areas: growth, limited growth, agriculture, conservation, pinelands and coastal zones. The SDGP includes concept maps which apply the designations to each county. In accordance with the concept maps, development is targeted for areas characterized as "growth".
Second, as another means of making the Mount Laurel doctrine work, the Court directed that a builder's remedy would ordinarily be afforded to a developer who institutes Mount Laurel litigation if three elements, which I shall discuss shortly, are established. The precise nature of the remedy is to be determined on a case by case basis. However, its general purpose is to assure a builder who shouldered the burden of Mount Laurel litigation that the end result of a successful litigation would be some specific relief in terms of a right to proceed with construction of a specific project. Given this background, I turn to the facts in the case before me.
Both parties stipulate that the SDGP designates the entire Township of Colts Neck as "limited growth" with the exception of a small area in the southwest corner designated as "growth". As noted, the presence of a growth area thereby creates a fair *603 share obligation for the Township. Plaintiff's proposed development falls squarely within the limited growth area, well removed from the portion designated for growth. Neither party contends, at this juncture, that there is a basis to challenge the reasonableness of the delineation of the growth and limited growth area as shown on the concept map. Finally, pursuant to Mount Laurel II requirements, plaintiff agrees that it will provide a "substantial" number of lower income housing units in order to obtain its builder's remedy. (92 N.J. at 279, fn. 37)
Our Supreme Court in Mount Laurel II discussed the guidelines by which the trial court can determine if a builder's remedy is appropriate. (at 279-80) I find that they can be categorized into three elements and I shall hereafter refer to them as the first, second and third element of the builder's remedy.
1. The developer must succeed in the litigation, that is, demonstrate that the zoning ordinance fails to comply with Mount Laurel II.

2. The developer must propose a substantial amount of lower income housing as defined in the opinion.
3. The impact of the proposal on the environment or other substantial planning concerns must not be clearly contrary to sound land use planning.
Both parties concede that Mount Laurel II does not speak directly to the issue before the Court. Each would have this Court draw various inferences from what is said in the decision concerning builder's remedies, the SDGP and the six cases before the Supreme Court. The Township essentially contends that the Supreme Court intended to use the SDGP as a blueprint for development of our State, to encourage future growth in the areas so designated and to preserve other less developed areas by discouraging expansion into those sections designated for limited growth. Thus, defendant argues that the granting of a builder's remedy in a limited growth area would violate the pattern of orderly development envisioned by our high Court. Plaintiff counters by contending that the SDGP should not receive such literal application and that nowhere in the opinion did the Court directly relate the SDGP to a right to a builder's *604 remedy. Out of this clash about the significance of the SDGP designation, the issue emerges  whether a proposed development in a limited growth area will automatically deny the builder the benefits of a builder's remedy.
I find nothing in either the SDGP or the Mount Laurel II analysis of that Plan that warrants adopting defendant's position. The concept maps of the SDGP, by admission of their authors, "consist of broad, generalized areas without site specific detail or precise boundaries...." (SDGP at ii-iii) The Court noted in Mount Laurel II with respect to the Plan: "(w)hile it does not purport to draw its lines so finely as to delineate actual municipal boundaries or specific parcels of land, the concept map, through the county maps, makes it quite clear how every municipality in the State should be classified...." (at 226)
Furthermore, just as the Supreme Court has allowed for flexible application of the SDGP to determine whether a municipality has a Mount Laurel obligation, I can find no cogent argument which would compel this Court to deprive itself of a similar flexibility in dealing with a builder's remedy. I note that in ascertaining whether a municipality has a fair share obligation, the Court has allowed for possible situations in which the SDGP will not be "the absolute determinant of the locus" of the fair share responsibility. (at 239) Thus, if a party can show that the concept map creates an arbitrary or capricious result or that the municipality has undergone a significant transformation that causes the characterization to become inappropriate, the fair share obligation can be created, eliminated or modified notwithstanding the concept map provision. (at 240)
Not only do I find nothing in the opinion to deny the trial court some freedom in dealing with the builder's remedy, but quite to the contrary, a careful reading of Mount Laurel II provides clear support for the holding that a builder's remedy is *605 not precluded as a matter of law in a limited growth area. I reach this conclusion for the following reasons:
1. The spirit of the opinion calls for this result.
2. The impact that a contrary result would have on the Mount Laurel goals is entirely inconsistent with these goals.
3. The Court's discussion of the builder's remedy makes no reference to the SDGP classification.
4. Caputo v. Chester (Mount Laurel II 92 N.J. at 309 et seq.) suggests the possibility that a remedy is available in a limited growth area.

1. The Spirit of the Opinion
A review of that portion of Mount Laurel II specifically devoted to the builder's remedy amply evidences the Court's desire to liberally apply that device. For example, the Court places the burden on the municipality of proving the negative planning or environmental impact of the proposed development, rather than placing the burden on the builder to prove that the site is appropriate. Further, merely because the municipality prefers some other location or because it can prove that a better site is available does not justify the denial of the remedy. Finally, the Court stresses that "(e)xperience ... has demonstrated to us that builder's remedies must be made more readily available to achieve compliance with Mount Laurel." (at 279) This emphasis possibly suggests that Mount Laurel's objective may not be achievable unless adequate economic incentives are held out to developers so that they will seek to enforce the Mount Laurel obligation of our municipalities. The remedy is the carrot. The builder may only reach it through a judgment of noncompliance and the provision of substantial lower income housing in an appropriate area of the community. The same incentive does not exist for nonprofit plaintiffs. Consequently, if Mount Laurel compliance is to be obtained statewide, those who stand to benefit most directly will carry the greater burden of Mount Laurel II litigation. In summary, the Court's placement of the burden of proof on the municipality, the discouragement *606 of the alternate site defense and the use of the builder's remedy as an incentive, all evidence a desire to liberally apply builder's remedies.

2. The Impact of a Contrary Rule
The plaintiff's assertion, that adoption of the Township's position would severely impair Mount Laurel's goals, appears to be a reasonable prediction. With more than fifty percent of our State classified other than as "growth", it is important to preserve all appropriately usable sites for potential development. The SDGP does not contemplate that the limited growth area will never accommodate growth under any circumstances. The purpose of the Plan is to control growth  not to eliminate it. It is a growth management strategy. (SDGP at 26-27)
Application of the rule suggested by defendant demonstrates that it would lead to results which are illogical and which fly in the face of the opinion. The following exemplifies an illogical result. If the builder's property were in limited growth area immediately adjacent to a growth area, plaintiff may not be able to prove that the SDGP classification is arbitrary and capricious, but the facts may demonstrate that a builder's remedy would comport with sound planning and have no negative environmental impact. The result would be that while the three elements of the builder's remedy are satisfied, the remedy would have to be denied.
The defendant's position flies in the face of the opinion which expressly requires entirely limited growth municipalities to provide for their indigenous poor. If the denial of the remedy is based solely on the SDGP classification, as opposed to the environmental and planning considerations of the third element, then all incentives to provide adequate housing to the indigenous poor would be lost. The paradox created is that those least economically able to move would be required to do just that, *607 because the only decent, affordable housing to be built would be in a growth area.

3. The Absence of Reference to the SDGP Classification for Builder's Remedy
Mount Laurel II demonstrates in at least three distinct ways an intent not to make the SDGP a component of builder's relief. First, the Court carefully articulated the elements of a builder's remedy without reference to the SDGP. (at 279-80) Second, the Court applied those elements to four of the six cases before it without implicating the SDGP in its holding. The analysis of the builder's remedy in those cases centered primarily on whether substantial lower income housing would result and what the impact would be on the environment or land use plan. Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel (92 N.J. at 308); Caputo v. Chester (92 N.J. at 315-316; Glenview Development Co. v. Franklin Township (92 N.J. at 321); Round Valley v. Township of Clinton (92 N.J. at 330-332). Third, the Court meticulously explained the limits it would impose on the grant of builder's relief. (at 280-81) Surely, had the Court intended to restrict the remedy to growth areas, it would have done so at this point.

4. The Implications of Caputo v. Chester
The SDGP designates the entire Township of Chester as limited growth. Yet, in Caputo v. Chester, 92 N.J. at 309 et seq., the Court rests its denial of a builder's remedy on environmental and planning concerns rather than on the SDGP. Therefore, the Court clearly implies that a remedy may be available in a limited growth area if environmental and planning concerns are satisfied. An examination of the Court's analysis reveals that initially, the Court concluded that the builder's remedy should be denied because the developer failed to prove the first element of a builder's remedy  that the ordinance failed to comply with the Mount Laurel obligation. Then, the Court pointed out that even if the plaintiffs had proven this element, *608 the third element could not be satisfied  that the proposal would not jeopardize the environment. Thus, rather than holding that the developer's parcel was in a limited growth area and therefore automatically precluded from development because of that designation, the Court construed the suitability of the builder's land in terms of its actual qualities rather than in terms of the SDGP classification. In short, if the designation of the property was a bar to a remedy, any discussion of environmental impact would have been unnecessary.
Three arguments advanced in support of defendant's motion warrant consideration.
First, some may contend that my holding in this case conflicts with language of the Supreme Court in its analysis of Round Valley v. Township of Clinton, (92 N.J. at 321 et seq.) where the Court warned of:
... the site specific pressure of locating a large-scale development in such a fashion in a growth area as to make it highly likely that growth will occur where it is intended not to, namely, in the "limited growth" area. (at 329; emphasis supplied)
The Court added:
... the revised ordinance should obviously be tailored to encourage lower income housing only in the "growth" area. (at 329; emphasis supplied)
While at first blush these statements might suggest that builder's relief is not available in a limited growth area, a closer look reveals that the Court did not intend such a result. The Court made the comments in the context of its analysis of a fair share obligation of the Township, not in the context of the developer's right to a builder's remedy. Clearly, the Court was establishing parameters for the trial court on remand in the reevaluation of fair share which was necessitated by replacement of the developing standard with the SDGP concept maps.
Clinton had been found to be a "developing" community under Mount Laurel I standards. While it's fair share was calculated on that basis at trial, on appeal, its fair share obligation had to be measured by Mount Laurel II guidelines. The SDGP placed approximately 60 per cent of the Township in a limited growth *609 area. In that context, a remand was called for so that the trial court could "determine whether the fair share can be accommodated completely in the growth area consistent with sensible planning". (at 329; emphasis supplied) Thus, the trial court was being instructed that it had latitude in adjusting the fair share. If it could be "accommodated" in the growth area "consistent with sensible planning", no adjustment was necessary. The trial court, in reaching that decision need not worry about the general, inevitable pressure that development in a growth area will have on adjacent limited growth areas. However, if "site specific pressures" would push growth into the limited growth area, the ordinance should be redesigned in conjunction with a revision downward of the fair share obligation.
Simply put, the apparent conflicting language merely means  do not try to compress the previously calculated fair share into the now reduced area allocated for growth if it will have a specific adverse effect on the overall growth management strategy for the area as envisioned by the SDGP. This comports with the Court's instruction that the percentage of growth area in a municipality will impact upon its fair share obligation. (at 339 fn. 71; at 351) Read in this light, the conclusions I have reached in this case are entirely consistent with the comments of the Court in Round Valley.
Secondly, I am aware of the following statement made by the Court in Mount Laurel II:
It is our intention by this decision generally to channel the entire prospective lower income housing need in New Jersey into "growth areas." (at 244)
The emphasis on the word "entire" is the Court's. The emphasis on the word "generally" is mine, for it demonstrates that the Court has provided in the very same sentence for a deviation from the principle it states. That coincides with the Court's observation just a few paragraphs before the above quotation that:
While there are numerous advantages to certainty in this area, it is much too complex to be dogmatic about almost anything. (at 243)
My opinion embraces this philosophy.
*610 Thirdly, others may contend that the net effect of this opinion is to give an uneven treatment to the SDGP in future decisions. An argument can be made that, on the one hand, the SDGP will provide a rather clear delineation in relation to a municipality's fair share obligation because the Court has warned that a deviation from the SDGP classification for this purpose will be the "unusual case". (at 239-40) On the other hand, the SDGP will arguably provide only a murky delineation in relation to the builder's remedy because the mere delineation will not be nearly as dispositive. The feared consequence is that the goals of the SDGP will be undermined. The threat may be more apparent than real. The use of the SDGP and of the third element of the builder's remedy both represent the Supreme Court's effort to reconcile the need for lower income housing with the environmental and planning dangers inherent in unplanned growth. The SDGP and third element adequately confine the area of discretion left to the trial judge and place limits on the right to deviate from the growth management plan. Therefore, the fear that an uneven application of the SDGP will undermine that Plan is not warranted. The environmental and planning factors which must be considered will prevent intrusion into the limited growth area when the facts do not strongly justify it.
All three counterarguments are based on an apprehension that damage will result from encouraging development in a limited growth area. The Court repeatedly recognizes the importance of environmental and planning concerns. The third element of the builder's remedy embodies these concerns. Mount Laurel II stands as a champion of the environmental and planning causes. Illustrative only are the following:
The lessons of history are clear, even if rarely learned. One of those lessons is that unplanned growth has a price ... (at 236)
And at 238:
The Constitution of the State of New Jersey does not require bad planning.... There is nothing in our Constitution that says that we cannot satisfy our constitutional obligation to provide lower income housing and, at the same time, plan the future of the state intelligently.
*611 And again at 219:
We reassure all concerned that Mount Laurel is not designed to sweep away all land use restrictions or leave our open spaces and natural resources prey to speculators.
Again at 331, footnote 68:
We emphasize here that our concern for protection of the environment is a strong one and that we intend nothing in this opinion to result in environmentally harmful consequences. See Mount Laurel I, 67 N.J. at 186-87.
See also, Mount Laurel II at 211, 220, 311-12.
Given the Supreme Court's endorsement of the SDGP goals and the Court's repeated assurances that Mount Laurel II need not result in bad land use, when the trial judge is faced with a request for a builder's remedy for a property located in a limited growth area, substantial weight should be given to the SDGP classification as it relates to the environmental and planning factors mirrored in the third element. Indeed, it could be argued that while in a growth area, the burden of proof to avoid the builder's remedy on these grounds is on the municipality, in the limited growth area the burden should be shifted to the builder. Because of the infinite variety of factual circumstances which might be faced and because of the absence of actual trial experience with this question or a pronouncement by a higher Court, I would hesitate to decide the issue of shifting burdens at this time. However, I would not hesitate to say that certainly the builder should be called upon to play a greater role in assisting the Court in its determination of the environmental and planning issues when the proposed development is in a limited growth area.
The fact issues concerning the environmental and planning impact of the proposed development are sharply in dispute. Therefore, it would be improper at this posture to determine whether the third element of the builder's remedy can be satisfied. Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 74 (1954). It may prove to be the rare instance in which a remedy will be granted in a limited growth area. My decision stands for nothing more than the proposition that the availability of a remedy cannot be foreclosed as a matter of law.