204 N.J. Super. 585 (1985)
499 A.2d 565
ORGO FARMS & GREENHOUSES, INC., A NEW JERSEY CORPORATION; AND RICHARD J. BRUNELLI, PLAINTIFFS,
v.
TOWNSHIP OF COLTS NECK, A MUNICIPAL CORPORATION; AND ZONING BOARD OF ADJUSTMENT OF TOWNSHIP OF COLTS NECK, DEFENDANTS.
SEA GULL, LTD. BUILDERS, INC., PLAINTIFF,
v.
TOWNSHIP OF COLTS NECK, DEFENDANT.
Superior Court of New Jersey, Law Division.
August 7, 1985.
*587 David J. Frizell for plaintiff Orgo Farms & Greenhouses, Inc. (Frizell & Pozycki, attorneys).
Louis F. Locascio for plaintiff Sea Gull, Ltd. Builders, Inc. (Drazin and Warshaw, attorneys).
Robert W. O'Hagan for defendant Colts Neck Tp. (Stout, O'Hagan & O'Hagan, attorneys).
Edward C. Eastman, Jr. for defendant Colts Neck Zoning Board of Adjustment (Lomurro, Eastman and Collins, attorneys).
SERPENTELLI, A.J.S.C.
On March 19, 1985 the court commenced a hearing concerning the suitability of the sites owned by Orgo Farms and Greenhouses, Inc. (hereinafter Orgo) and Sea Gull, Ltd. Builders, Inc. (hereinafter Sea Gull) for development of Mount Laurel housing. The hearing was unusual in that the court does not normally determine the issue of suitability until such time as a compliance ordinance has been submitted. However, because the fair share was stipulated, the court sought to provide the township with guidance concerning its compliance package by passing upon the issue of suitability. This opinion will dispose of that issue.
Before doing so, a brief procedural history is helpful. In 1978 Orgo sued Colts Neck Township alleging that its zoning ordinance was exclusionary. On July 3, 1979 the trial judge declared the ordinance void for failure to provide an appropriate variety of housing. The judgment was affirmed by the Appellate Division. The trial judge did not, however, provide specific *588 relief for Orgo due to his finding that it had failed to exhaust its administrative remedies. Based upon that ruling Orgo made application to the board of adjustment which was denied.
The plaintiff appealed the denial of the variance. At the same time the township's petition for certification from the decision of the Appellate Division was pending. On January 20, 1983 the Supreme Court decided Southern Burlington Cty. N.A.A.C.P. v. Mt. Laurel Tp., 92 N.J. 158 (1983) (hereinafter Mount Laurel II) and on May 4, 1983 it remanded the Colts Neck case to this court for consideration in light of that decision. 93 N.J. 321. Shortly after the case was received by this court the township sought a ruling as a matter of law that Orgo would be precluded from receiving a builder's remedy because of its location in a limited growth area. The court denied that relief. Orgo Farms & Greenhouses v. Colts Neck Tp., 192 N.J. Super. 599 (Law Div. 1983) Thereafter, the township sought relief from its prospective need obligation by seeking to move the State Development Guide Plan (hereinafter SDGP) growth line out of the township. A hearing was held in March 1984 concerning that issue. On April 5, 1984 the court denied that relief. On April 10, 1984 the court appointed Philip Caton, a professional planner, to evaluate the suitability of the sites involved in the litigation. His report was received on July 17, 1984. Thereafter, a trial was held concerning the suitability issue.
Notwithstanding the extensive testimony and post-trial briefs, there is a threshold issue which is dispositive of this aspect of the case. If Orgo is not entitled to a builder's remedy, the township is free to choose the Sea Gull property and such other sites as will satisfy its fair share. A plaintiff becomes entitled to a builder's remedy by satisfying a three-prong test as described in Mount Laurel II. 92 N.J. at 279-280. The plaintiff must succeed in litigation, propose to construct a substantial amount of lower income housing, and pursue a project that is not unsound from a planning or *589 environmental standpoint. Orgo, supra, 192 N.J. Super. at 603. The court holds that the Orgo project is contrary to sound land use planning and is therefore unsuitable. Thus, it fails to satisfy the third prong of the entitlement test and cannot qualify for a builder's remedy.
As pointed out in Orgo Farms & Greenhouses v. Colts Neck Tp., supra, the Orgo parcel is located virtually in the middle of the large limited growth area of Colts Neck Township. The court suggested in that opinion that the burden of proving the suitability of a site located in that area could be a very heavy one. "I would not hesitate to say that certainly the builder should be called upon to play a greater role in assisting the Court in its determination of the environmental and planning issues when the proposed development is in a limited growth area." Id. at 611.
The court recognizes that the continued viability of the SDGP designations has been questioned by Orgo. Indeed, our Supreme Court did contemplate that the SDGP would be revised by January 1, 1985. The court acknowledges that it now has "considerable discretion to vary the locus of the Mount Laurel obligation from that shown on the present SDGP concept map." Mount Laurel II, 92 N.J. at 242. However, no evidence was presented which would indicate that there has been any significant modification in land use development patterns within Colts Neck Township since the SDGP became a determinant of the Mount Laurel obligation. While the SDGP line may not be dispositive, there is no reason why the court cannot continue to utilize the purposes underlying the creation of the growth classifications and the delineation between growth and limited growth as long as the circumstances which supported that delineation continue. I need not repeat what was said in Mount Laurel II or in Orgo Farms & Greenhouses concerning the importance of controlling development in limited growth areas and channeling development into growth areas. The fact that January 1, 1985 has come and gone without the preparation of a new SDGP should not cause the court to throw *590 planning to the wind by allowing this predominantly undeveloped community to experience large scale development in the middle of an essentially rural farm area.
Mount Laurel II remains one of the foremost judicial statements of concern for protection of the environment and the preservation of natural resources. It was intended to guard against the inappropriate use of open space and to prevent it from falling prey to speculators. Those principles did not evaporate on January 1, 1985. They remain viable if the factual circumstances justifying a limitation of development also remain viable.
The next reason for denying Orgo a remedy flows from the report and testimony of the court's expert. Both plaintiffs claimed victory after reviewing the July 1984 report. The meaning of the report was apparently in the eyes of the beholder. It was not the intention of Caton in that report to make a planning judgment as to the relative suitability of the two sites or, for that matter, as to whether Orgo should be permitted to develop within the limited growth area. Caton found both sites generally suitable for development and also found deficiencies with respect to each site.
What is more revealing is his testimony concerning the appropriateness of each of the sites for Mount Laurel development. Caton indicated that the most recent Tri-State Regional Development Guide severely restricted the area around the Orgo site for development purposes. The Growth Management Guide of Monmouth County provided for a village concept of not more than 200 homes and there is presently a housing development of 125 homes in that village. He also noted that some of the Orgo project would fall outside the village node. He found the scale of the development of the Orgo proposal to be at variance with the county guide.
Caton stated that the SDGP favors development in areas with existing infrastructure and he agreed with that from a planning standpoint. It troubled him as a planner to encourage the *591 installation of a waterline over a 3.7-mile stretch to connect with the Monmouth Consolidated Water Company along Route 537. He felt that such development was in contravention of the SDGP. He added that because the infrastructure is costly even if undertaken by private companies, it would be an inefficient way to meet housing demand. He testified that he was aware of the intention of the Department of Environmental Protection to limit ground water diversion in "critical areas" which includes part of the Monmouth Consolidated area. Furthermore, he questioned whether Monmouth Consolidated would, in fact, install a small line down Route 537 to service only the Orgo property and no others since that would be a wasteful expenditure.
The court expert believed that the Orgo property would impact upon the compatibility of adjacent farm uses. Buffering could be used but he characterized that as "making the best of a bad situation" created by placing housing of a dense nature along a common boundary of approximately 4,000 feet with the adjacent farmland. He noted that additional traffic improvements would be required at the Route 34 intersection if the Orgo site were developed. He concluded that from a Mount Laurel planning standpoint the Sea Gull site would be preferable to the Orgo site if water and sewer were available to Sea Gull through Freehold Township or some other source.
Caton found that developing the Orgo site with 1,000 dwelling units, a hotel and a 45,000-square foot commercial space could be characterized as an aspect of urban sprawl. While specific site construction might be designed so as to be compact and therefore not constitute sprawl, the scale of development looking beyond the site could be deemed as urban sprawl. Conversely, the Sea Gull tract which abuts Freehold Township is adjacent to existing development of numerous homes on 25,000-square foot lots and another subdivision on 40,000-square foot lots. Like Orgo, it abuts a farm. However, Caton concluded that the stream lying between the two sites acts as a natural buffer and avoids an incompatibility of the use on the *592 Sea Gull site and the adjacent farm. Orientation of the Sea Gull tract is towards Freehold Township.
The court agrees with the conclusions reached by the expert. Early in this case the court had the opportunity to view a video tape and flight path map of an aerial tour of the township and surrounding lands. The court was struck by the vast area of remaining farmland within the township and the rather limited residential development. At that point, the court did not have the benefit of Caton's expert testimony. However, the immediate conclusion that common sense dictated upon viewing the tape was that massive development in the middle of that farmland would impact significantly upon the planned growth of the community. Just as the court found in the first Orgo opinion, that the SDGP line was appropriately drawn to include a portion of Colts Neck barriered by Route 18, the court can as easily find that the barrier appropriately excludes an expanse of relatively virgin territory within the limited growth area. That was as true in March 1985 as it was at the time that the court viewed the tape and no amount of innovative planning, buffering or other devices can take away the potential for the disruption of the existing land-use pattern in that area. The Tri-State Regional Development Guide provides for a density of zero to .5 units per net acre and the county management guide now designates the area in question as "agriculture-conservation." While there is a village node adjacent to this site in the county management guide, Caton found that the commercial facilities in that node are already beyond the definition given by the guide to a village center. The development of an additional 45,000 square feet of commercial space would far exceed anything contemplated by that planning concept.
The thought that Monmouth Consolidated would expend the funds involved to bring a small water line nearly four miles to service only the Orgo tract defies logic and is contrary to sound planning. While Orgo might have such a commitment, the court should not encourage such an inefficient use of resources. Furthermore, the existence of that line will inevitably create *593 developmental pressures for the enlargement of the line which would be more difficult to resist once it is in place.
A word should be said about Orgo's equity arguments. It asserts that it has diligently pursued the litigation for approximately seven years. Therefore, Orgo contends that it would be unfair to deny it a remedy. However, any sophisticated land developer knows that zoning litigation is a risky business. The local ordinances can change, market factors can shift and nothing is certain until the building permits are issued. It is true that Orgo could not anticipate the effect of the SDGP on the land which it had selected for development. On the other hand, it is also true that it sought to develop in an area where it might expect heavy local resistance. Orgo's equity claim may also be based upon the argument that the SDGP classification should not affect its rights because when it started its suit the SDGP was not a part of the Mount Laurel doctrine. Orgo has most recently taken the alternative position that the failure to revise the SDGP leaves the court free to award it a remedy. The fact of the matter is that the limited growth classification alone is not the basis for finding the Orgo site unsuitable. It is the facts that underlie that classification which have been recited above which justify that finding. Those facts support the classification and remain constant even if the classification is no longer given the same legal effect.
Finally, the court must acknowledge that Orgo has raised some substantial questions with respect to whether the Sea Gull site will, in fact, be developed for Mount Laurel housing. The court expert has also indicated that there are hurdles to overcome. The Township of Freehold has asserted its position that it will not voluntarily provide necessary infrastructure. These issues are not relevant to the question of whether the Orgo site must be used as the parcel to satisfy the township's fair share. At the compliance stage, the court will examine in depth whether the Sea Gull site presents a realistic opportunity for the construction of lower income housing within *594 the time required by the court and, if not, it too will not be included within the approved compliance package. The township will then have to find another means to satisfy its obligation. It must be kept in mind that the comparative suitability of the two tracts is not the issue. Rather, the question is whether either or both of the tracts are suitable for Mount Laurel construction. In that regard the court has found that the Orgo site clearly should not be included in the compliance package. The Sea Gull property has the potential for inclusion in the compliance package assuming that it can be determined at the compliance hearing that any constraints to development are likely to be resolved.
In summary then, the court finds that the Orgo site is not a suitable tract for Mount Laurel purposes. The township is therefore ordered to prepare its compliance package forthwith. Since it has already stipulated its fair share at 200 units, it has agreed to include the Sea Gull site in its compliance package and it has done substantial planning work with respect to compliance, the court will allow a period of 60 days within which to submit the final compliance ordinance. During that time the township may utilize the services of the court expert to assist it in the development of that package. Indeed, his involvement is encouraged so that the submission will be in keeping with other compliance ordinances previously approved. Caton is generally familiar with many of the issues involved in the compliance process and how they have been resolved.