JOHN LYNCH, GRETCHEN LYNCH, KATHERINE SMOOT AND HACKENSACK WATER COMPANY, PROSECUTORS, v. BOROUGH OF HILLSDALE, EDMOND L. GREENIN, MAYOR, GARRETT A. STORMS, BOROUGH CLERK, SADDLE RIVER FARMS, INC., AND DAVID G. LUBBEN, DEFENDANTS.

Submitted January 22, 1947—Decided September 9, 1947.

Before CASE, CHIEF JUSTICE, and Justices HEHER and COLIE.

For the prosecutors, *Morrison, Lloyd & Griggs*.

For the Borough of Hillsdale, *Charles W. Weleck*.

For the defendants Saddle River Farms, Inc., and David G. Lubben, *Winne & Banta* (*Walter G. Winne*, of counsel).

The opinion of the court was delivered by

HEHER, J. *Certiorari* was granted to review a resolution of the governing body of the defendant municipality, adopted on August 13th, 1946, purporting to grant to the defendant Lubben permission "to change the use" of a building situate in a district of the municipality zoned for residential uses "from the raising of chickens to the manufacture and packing of candy for the balance of" the term of a pre-existing temporary "non-conforming permit" for "the raising of chickens" therein, *i. e.*, a five-year period commencing May 14th, 1946, upon condition that Lubben, by contract with the borough, would bind himself, "his heirs, executors or assigns, * * * not to request the renewal of said non-conforming permit" upon its expiration, and to make all future conveyances of the lands subject to that stipulation, and as well the contract made pursuant to the resolution on August 23d, 1946 between the municipality and the defendant Saddle River Farms, Inc., the grantee of the lands. Lubben acquired the lands on June 23, 1945; and on January 10th, 1946, he conveyed them to the named grantee, a holding corporation wholly owned by him. The resolution and the contract both recite a finding by the local governing body that the proposed "change of use * * * will be no more harmful to the surrounding property owners than its present use," and that "the best interests" of the community will be thereby served. The contract bound the permittee to use the building covered by the permit "in such a manner as not to constitute a nuisance through the emission of excessive noises or odors."

The local zoning ordinance divides the municipality into districts and enumerates the uses permissible in the several districts thus created. The use made the subject of this special permit is not one of those permissible in the residential districts. But a "farm" is an authorized use in the particular district. The ordinance established a board of adjustment and vested it with power, *inter alia,* to "Grant in appropriate cases temporary permits for not to exceed five years for non-conforming uses." This provision was repealed on September 10th, 1946.

On July 9th, 1946, Lubben applied to the local building inspector for permission to "alter" the building to make it usable for "the packing of candy." The application was denied. He "appealed the decision" to the Board of Adjustment; and in the notice of appeal given to that tribunal, he stated that the proposed new use was to be limited to the balance of the term of the current "non-conforming" use permit, expiring on May 13th, 1951. He assigned these reasons for the suggested change of use: (1) the "manufacture of candy and the packing of same will be no more harmful than its present use;" and (2) the change would result in giving "employment to some forty or fifty residents of the borough, until such time" as he could construct a factory in the borough's industrial zone, on land which he had "recently acquired" for the purpose. Thus, there was invoked the original jurisdiction of the zoning board. On July 31st, 1946, that body, after a hearing on notice to the adjacent landowners, unanimously denied the "application for variation" on the ground that its allowance "would give industrial rights within a residential district," and would not be in the public interest. There was no hearing by the governing body before the adoption of the resolution under review. It is justified as within the inherent power of that tribunal. It is said that it "can do by resolution whatever the Board of Adjustment is authorized to do." The right to review the action of the zoning board, and to affirm or reverse, whether that action be favorable or unfavorable to the applicant, is vigorously asserted. The query is put: "Is the agent superior to the master." But this evinces a radical misconception of the statutory scheme.

In the exercise of the powers conferred by the statute and the ordinance, the zoning board is not the agent of the local governing body. It is a statutory creation for the effectuation of the essential legislative policy. It performs *quasi-judicial* functions, in their essence discretionary, controlled by the principle and policy of the statute and the local ordinance so far as consistent therewith. *Potts* v. *Board of Adjustment of Princeton,* 133 *N. J. L.* 230. There is no appeal to the local governing body from the board's judgments. Its functions are delineated in the statute. *R. S.* 40:55–39. The jurisdiction to grant "special exceptions" under subsection b is limited to the area abutting a district wherein the proposed use is permissible under the ordinance, for a distance of 150 feet from the boundary line. By subsections c and d, these tribunals are authorized to grant a variance in the like area "upon appeal in specific cases" where, "owing to special conditions," a literal enforcement of the ordinance would result in "unnecessary hardship," and in such circumstances to "recommend" a variance to the governing body where the projected use is not permissible in the abutting district or the lands are more than 150 feet beyond the boundary line of the district in which such use is allowable. Arbitrary distinctions are inadmissible. The board's action in respect of suggested variances in the marginal area is final and conclusive, subject to judicial review for "fraud or other abuse;" and this is likewise true of its denial of an exception beyond the border area. The governing body is vested with jurisdiction to grant a variance outside of the marginal area only where the exception has been recommended by the zoning board, after an inquiry upon due notice; and it, too, is controlled by the statutory considerations in the exercise of the power. The statute has reference to a positive or affirmative recommendation. Subsection d empowers the board to "recommend" the variance "in writing" to the governing body; and the latter's authority is limited to the "approval" or "disapproval" of "such recommendation." If "such recommendation" shall be "approved" by the governing body, the administrative officer is enjoined to issue the permit. The determination of the question of variances and

special exceptions has been confided by the legislature to the specialized judgment of the zoning board; and the action of that agency is subject to judicial correction only where it is arbitrary, capricious or unreasonable. *Brandon* v. *Montclair,* 124 *N. J. L.* 135; *affirmed,* 125 *Id.* 367; *Concord Development Co.* v. *Dowling,* 6 *N. J. Mis. R.* 552; *Crescent Hill, Inc.,* v. *Allendale,* 118 *N. J. L.* 302; *Meixner* v. *Board of Adjustment of Newark,* 131 *Id.* 599; *National Lumber Products Co.* v. *Ponzio,* 133 *Id.* 95.

It is said that subsection d, *supra,* relates to a "permanent" and not to a "limited exception," and the provision of the ordinance for the allowance of "temporary" non-conforming uses, for a term not to exceed five years, represents a valid exercise of the local legislative power. But this is an obvious misinterpretation; for, whatever the duration of the variance, whether definite or indefinite, it must perforce be grounded in the considerations to be served by zoning. A use which is not the proper subject of a variance lasting and inviolable in character is not permissible for a limited period. If it were, zoning would become a dead letter. The statute is to be interpreted in keeping with its evident reason and spirit. An exposition at odds with its manifest policy is inadmissible.

But if that provision of the ordinance be read as confined to such exceptions and variances as would advance the essential design and purpose of the statute, the exercise of the power here was plainly grounded in considerations alien to the policy of the act and so must be struck down as arbitrary and capricious. A pre-existing non-conforming use may not be enlarged or radically modified simply because the new use would be "no more harmful" than the old to the adjacent landowners. And, *a fortiori,* a temporary non-conforming use is not permissible merely because it will supplant a conforming use deemed more obnoxious by the governing body. The municipality suggests that the pre-existing use, denominated a "chicken farm," is in fact allowable under the ordinance in the particular residential zone, and that it was "good sense" and "sound judgment" to issue a temporary permit for the non-conforming use and thus be rid of an objectionable conforming use. This is termed a "compro-

mise" by which "each gives up something," *i. e.,* an agreement supported by a consideration. Thus, the action of the governing body was motivated by whim and caprice rather than by the reason and spirit of the statute. It was, in reality, an irregular and wholly ineffectual exercise of the local legislative power.

We find no merit in the point that the landowner "has changed its position substantially as a result of the action of the municipality," and therefore "it would be unjust to overrule the action of the governing body at this time." The elements of estoppel are not present. The municipal action taken by the governing body was *coram non judice,* and, quite apart from the other considerations, the beneficiary may not, by a fairly prompt expenditure of money, put such action forever beyond challenge. The public has an interest in zoning which cannot thus be set at naught. This is not to say that we find the evidence as to expenditures on the faith of the challenged action convincing in its entirety.

And there is no substance to the contention that prosecutors have not shown the special injury or damage requisite for an attack upon the ordinance and contract by *certiorari.* Three of the prosecutors are the owners of lands adjoining the premises in question, and the fourth is the owner of lands in the immediate vicinity; and thus they have the special interest essential to a review of the action by *certiorari. Appley* v. *Bernards Township,* 128 *N. J. L.* 195; *affirmed,* 129 *Id.* 73.

The ordinance and the subsidiary contract are accordingly set aside, with costs.