32 N.J. Super. 57 (1954)
107 A.2d 717
HILLSIDE HOLDING CORP., PETITIONER-APPELLANT,
v.
DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1954.
Decided September 13, 1954.
*59 Before Judges JAYNE, STANTON and HALL.
Mr. Leopold Frankel argued the cause for appellant (Messrs. Frankel & Frankel, attorneys).
*60 Mr. Herman D. Ringle argued the cause for respondent (Mr. Dominic J. Hart, attorney).
The opinion of the court was delivered by HALL, J.S.C. (temporarily assigned).
The plaintiff appeals from a decision of the Commissioner of Labor and Industry, dated November 30, 1953, affirming a prior ruling of the Director of the Division of Employment Security holding that it attained subject status as an "employer" under the Unemployment Compensation Law on May 11, 1941, effective as of January 1 of that year, and that the status continued until December 31, 1945 in the absence of an earlier application for termination of coverage. The effect of the decision was to make the plaintiff liable for contributions under R.S. 43:21-7 for the years 1941 through 1945. The basic facts of the situation are not in dispute and the primary question is the interpretation and application to these facts of the pertinent definitory paragraphs of R.S. 43:21-19 as they stood in 1941.
These paragraphs read as follows:

"43:21-19. Definitions

* * * * * * * *
(g) `Employing unit' means any individual or type of organization, including any partnership, association, trust, estate, joint-stock company, insurance company or corporation * * * which has * * * in its employ one or more individuals performing services for it within this State. * * *.
(h) `Employer' means:
(1) Any employing unit which for some portion of a day * * * in each of twenty different weeks * * * has or had in employment, eight or more individuals * * *;
(2) * * *
(3) * * *
(4) Any employing unit which together with one or more other employing units, is owned or controlled (by legally enforcible means or otherwise), directly or indirectly by the same interests, or which owns or controls one or more other employing units (by legally enforcible means or otherwise), and which, if treated as a single unit with such other employing unit or interest, would be an employer under paragraph (1) of this subsection; * * *."
Cliffside Dyeing Corporation ("Cliffside") was organized as a New Jersey corporation on May 8, 1940, with three *61 officers and shareholders. The plaintiff ("Hillside") was similarly organized on November 15, 1940, with the same three persons as its only officers and shareholders. The first corporation operated a dyeing plant and the plaintiff acquired and owned the machinery and equipment used therein, leasing it to Cliffside. Hillside's only employees were its three officers. Cliffside had a large number of employees, far exceeding the eight then required (now four) to come within the statute, even if one were to exclude the three officers common with Hillside. Cliffside was, during the years in question, always a subject employer and paid its contributions, including those computed on the earnings of the three employee-officers holding similar positions with Hillside. It is conceded that Hillside was not organized for the purpose of evading the law. The identical stockholdings in the two corporations continued until December 24, 1943, when two outsiders acquired stock in Cliffside, thereby terminating ownership and control of the two corporations by the same interests.
The plaintiff never filed any returns or made any payment of contributions under the statute. The situation was discovered by the defendant when a third affiliated corporation, Cliffside Realty Corporation, sought to terminate coverage as of December 31, 1948. A subsequent field audit was made by the Division which disclosed the alleged liability of Hillside for the years in question and resulted in the assessment for both employer and worker contributions here under attack. Hillside, never having filed any returns or paid any contributions, did not, following the change in ownership of Cliffside in 1943, file any application for termination of coverage by January 5, 1945, as required by the then-existing provisions of R.S. 43:21-8(b).
The decision below determined that the identical stock ownership of Hillside and Cliffside constituted ownership and control by the same interests under R.S. 43:21-19(h) (4) and that thereby Hillside became a subject employer because it, together with Cliffside, had in employment eight or more individuals during the requisite period. In other *62 words, by reason of the identical ownership of the two corporations as of January 1, 1941, Hillside was "treated as a single unit with" the "other employing unit" (Cliffside), and the employees of Cliffside were added to the three employees of Hillside, giving the latter more than eight employees and consequent subject status. The Division further held that, once having obtained such status, plaintiff remained liable for contributions through the year 1945, even though the unity of interest between the two corporations was destroyed by the two new stockholders coming into Cliffside on December 24, 1943, no application having been made to terminate the coverage.
The plaintiff's principal contention is that section 19(h) (4) is applicable only where both entities involved have less than eight employees, whereas, in the present situation, only one had fewer than the required number. It further contends that its three employees were wrongfully counted twice, that the refusal to recognize the termination of subject status in 1943 is improper under the circumstances and that the section is unconstitutional.
The wording of this statute, as in the case of all legislative enactments, must be construed according to its true meaning, which is ordinarily that which best comports with the subject and general object of the statute. The expressed intention of the Legislature must be ascertained and given effect. Central Railroad Company of New Jersey v. Director, Division of Tax Appeals, 8 N.J. 15, 27-28 (1951).
In construing and applying R.S. 43:21-19(h) (4), it must be kept in mind that the Legislature has specially and separately defined "employing unit" and "employer." They are not the same thing under the statute. An "employing unit," as defined in R.S. 43:21-19(g), is any entity "which has * * * in its employ one or more individuals," regardless of whether or not the entity is subject to the law by virtue of other requirements thereof. The term "employer" is not used in its broad and ordinary sense, but rather is limited to an "employing unit" which is subject to and covered by the law because it also has the additional *63 qualifications specified in R.S. 43:21-19(h). So every entity having at least one worker is an "employing unit," but is not also an "employer" unless it meets the further requisites.
The language of R.S. 43:21-19(h) (4) is clear, plain and definite. It simply means, when read with subdivision (h)(1), that an "employing unit" became an "employer," in 1941, subject to the law and required to pay contributions, where it, together with another "employing unit," was owned or controlled by the same interests, or where it owned or controlled another "employing unit," and where the first "employing unit," if treated as a single entity with the second, i.e., by adding together the employees of both for this purpose, thereby achieved the "employment" of eight or more individuals in each of 20 different weeks within the current or preceding calendar year. Subdivision (h)(4) is factually applicable only where the entity sought to be taxed, i.e., the first "employing unit," employs less than the requisite number. Its operation determines subject status solely; once an entity with less than eight employees is thereby found to be subject to the law, it pays contributions only with respect to its own actual employees and not also with respect to the employees of the other unit combined with it for the single, preliminary purpose of determining whether it is subject to the law. Conversely, the second unit, if also qualifying as a subject "employer," pays contributions only concerning its own actual employees. If workers, by reason of dual employment with both entities, are subjected to a greater liability for their contributions than if they had only one employer, they may obtain refunds. R.S. 43:21-14.1.
It is not for us to question or pass upon the initial or continued wisdom of these particular statutory provisions. That is the sole province of the Legislature in fulfilling its task of prescribing detailed means and methods to implement the declaration of state public policy set forth at the beginning of the Unemployment Compensation Law. R.S. 43:21-2. The judicial function must be limited to interpreting *64 and applying the act to the facts of a given case, assuming that constitutional standards and safeguards have been satisfied.
We find nothing in the language of subdivision (h)(4) or elsewhere indicating that each unit must have less than eight employees of its own before the provisions become operative. On the contrary, we think the legislative intent is plainly expressed, free from ambiguity, that the subdivision comes into play when either or both have less than the requisite number, provided the total is greater than eight. Where statutory language is explicit and clear, the court is not free to presume that the Legislature intended something other than what it actually expressed. The enactment must speak for itself and be construed according to its own terms. Bass v. Allen Home Improvement Co., 8 N.J. 219, 226 (1951).
The point has not previously been squarely passed upon by our appellate courts, but in Finston v. Unemployment Compensation Commission, 132 N.J.L. 276 (Sup. Ct. 1944), affirmed sub nom. Naidech v. Unemployment Compensation Commission, 134 N.J.L. 232 (E. & A. 1946), where one unit had more than eight employees but the necessary element of full common ownership or control was found to be lacking, the court indicated that the subdivision would be applicable if this latter essential in fact existed. The plaintiff appears to place principal reliance on cases from other jurisdictions having similar statutory provisions, but careful examination of those decisions fails to disclose any where liability was denied because one of the units involved had more than the minimum number of workers. For example, John P. Moriarty, Inc. v. Murphy, 387 Ill. 119, 55 N.E.2d 281 (Sup. Ct. 1944) is substantially similar in holding and indication to the Finston case. There are authorities elsewhere holding it permissible to combine an entity with one already subject to the law to bring the former within its provisions, e.g., New Haven Market Exchange v. Administrator, etc., 139 Conn. 709, 97 A.2d 262 (Sup. Ct. Err. 1953).
*65 Hillside also suggests that its contention is buttressed by language in Milrose Co., Inc. v. Unemployment Compensation Commission, 126 N.J.L. 441 (Sup. Ct. 1941), where the court spoke of the purpose of subdivision (h)(4) being to "prevent employing units splitting into parts each employing less than eight individual employees so as to escape assessments for employers' contributions" (126 N.J.L., at page 442). But the statement must be read in the light of the facts, for there the court was concerned only with two units each having less than the minimum number and found that the necessary number was still lacking when the two were combined. The later case of Wiley Motors, Inc. v. Unemployment Compensation Commission, 130 N.J.L. 30 (Sup. Ct. 1943), affirmed 131 N.J.L. 228 (E. & A. 1944), in clarifying the construction to be placed on the Milrose opinion, also does not aid the plaintiff's argument. While one purpose of the subdivision is certainly to prevent splitting businesses into small units having less than eight employees each to avoid payment of contributions, that is not its only purpose or permitted application in the light of the plain language used. The Legislature obviously also had in mind effecting the broadest possible coverage of workers.
We find no merit in Hillside's contention that the three common officer-employees of it and Cliffside were wrongfully counted twice. Cliffside had more than eight employees excluding these three, so they did not have to be counted at all in order to impose subject status on Hillside under subdivision (h)(4). We are not concerned with the problem of the Milrose case where the double counting of nominal or non-salaried officer-employees was necessary in order to reach a combined total of eight was held to be erroneous. Hillside is not subject to double liability by reason of the dual employment and it cannot object on the ground that there may be double liability for workers' contributions imposed upon the common employees. Dual employees may secure relief by claim for refund. R.S. 43:21-14.1.
The plaintiff also contends, assuming that subdivision (h)(4) applies to it, that it should not now be subjected *66 to liability for contributions beyond December 31, 1944 since common ownership and control with Cliffside ceased on December 24, 1943. The statute at the time provided that coverage should continue until a subject employer filed application for termination of coverage prior to January 5 of any calendar year demonstrating that it did not have the requisite employment experience during the preceding year. R.S. 43:21-8(b). Admittedly, this was not done, for it apparently had decided solely on its own initiative, but mistakenly, in 1941 that it was not subject to the law and therefore filed no returns and paid no contributions. In view of the clear language of the subdivision and since not even the Milrose case had been decided when it first became liable, we think it should have disclosed the situation to the Division by filing returns and paying contributions under protest and thereafter have sought an early determination of the question by claiming a refund of the whole amount paid. See R.S. 43:21-14(f). A decision adverse to it at that time would have still permitted it to apply properly for termination of coverage at the appropriate date. Having chosen to gamble on its own interpretation of the law, it cannot now complain of the consequence that it is too late for it to comply with the statute concerning termination.
Hillside also urges that R.S. 43:21-19(h)(4), in permitting the piercing of the corporate veil, violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. Its argument thereon in its main brief is only one page long, merely citing three cases from two jurisdictions. Two of these citations are repeated in its reply brief, the two and one-half pages of which on this point being devoted principally to a recitation of states in which a similar section has been repealed or amended. Respondent's answer to the contention comprises one printed page, merely stating that constitutionality was sustained in Wiley Motors, Inc. v. Unemployment Compensation Commission, supra. A study of that opinion would indicate, however, that on its face, the decision was confined to a determination that the legislative selection of the arbitrary *67 number of eight employees to make the act operative to a particular entity was not violative of constitutional prohibitions. We consider that the point now urged to us by plaintiff is not adequately argued and we consequently decline to pass upon it. Leave, however, is granted to counsel of the appellant, if desired, to file, within 30 days in the Appellate Division in this appeal, a brief, with the requisite copies, confined solely to its point IV relating to the constitutionality of this subdivision of the statute. In such event, the mandate will be withheld and the service of the brief upon counsel for the respondent and the filing of the answering brief shall be in accord with the requirements of the rules. If this course is not followed by the appellant, the judgment is affirmed, the mandate to issue at the end of 30 days.