729 A.2d 473 (1999)
321 N.J. Super. 462
SHIRE INN, INC. and Sylvan Hotel Corp., Plaintiffs-Appellants,
v.
BOROUGH OF AVON-BY-THE-SEA and Planning Board of the Borough of Avon-By-The-Sea, Defendants-Respondents,
Thomas Sarantos, Intervenor-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 1999.
Decided May 27, 1999.
*474 Joseph E. Murray, Berkeley Heights, for plaintiffs-appellants (Joseph E. Murray & Associates, attorneys; Mr. Murray, of counsel and, with Jay B. Bohn, on the brief).
Thomas S. Capron, Avon by the Sea, for defendant-respondent Borough of Avon-by-the-Sea.
Carton, Witt, Arvanitis & Bariscillo, Asbury Park, for defendant-respondent Planning Board of Avon by the Sea, relying on brief filed on behalf of defendant-respondent Borough of Avon by the Sea.
Bernard M. Hartnett, Jr., Jersey City, for intervenor-respondent Thomas Sarantos (Schiller, Squeo & Hartnett, attorneys; Mr. Hartnett, of counsel and on the brief).
Hill Wallack, Princeton, for amicus curiae Non-Profit Affordable Housing Network of New Jersey (Stephen Eisdorfer, of counsel and on the brief).
Before Judges LONG, KESTIN and CARCHMAN.
The opinion of the court was delivered by KESTIN, J.A.D.
In this Mount Laurel action, see Southern Burlington Cty. N.A.A.C.P. v. Mount Laurel Twp., 67 N.J. 151, 336 A.2d 713, cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) (Mount Laurel I), plaintiffs appeal from a Law Division judgment which denied a "builder's remedy," see Southern Burlington Cty. N.A.A.C.P. v. Mount Laurel Twp., 92 N.J. 158, 278-81, 456 A.2d 390 (1983) (Mount Laurel II), while, inter alia, approving Avon-By-The-Sea's (the Borough) fair share plan and housing element with amendment and establishing some details of implementation. The only issue before us is the availability of the builder's remedy. *475 Plaintiffs own a hotel of twenty-four rooms and one two-bedroom apartment. It is a pre-existing, non-conforming use in a residential zone. The builder's remedy plaintiff sought was the court's approval of a plan to convert the hotel use into a class A rooming house consisting of twenty-six units, twenty-four single rooms and two two-bedroom apartments.
Judge Gilroy denied the builder's remedy for reasons expressed in an oral opinion. He outlined the procedural history of the litigation and related matters, noting the Borough's net fair-share obligation of twenty-three housing units established in an earlier ruling; and he described the location and contours of the tract at issue as well as the details of its current use. Judge Gilroy determined that plaintiff had satisfied two of the three requirements for eligibility for a builder's remedy: it had successfully prosecuted a Mount Laurel suit, and its proposed set-aside of five out of twenty-six units was, in the circumstances, a substantial amount of low and moderate income housing. Mount Laurel II, supra, 92 N.J. at 279-80, 456 A.2d 390. See also Orgo Farms & Greenhouses, Inc. v. Colts Neck Twp., 192 N.J.Super. 599, 603, 471 A.2d 812 (Law Div.1983). He held, however, that plaintiff had failed to meet the third eligibility requirement, that "[t]he impact of the proposal on the environment or other substantial planning concerns must not be clearly contrary to sound land use planning." Ibid. Rejecting the conclusion of the special master "that the site was suitable for the proposed project and that ... the proposed use would be similar in impact to the impact of existing, nonconforming use[,]" Judge Gilroy found "that the proposed use is not suitable for the site and is ... contrary to sound land use planning." He explained:
Shire's argument in favor of the proposed builder's remedy is that the building exists and the use is similar in nature to a hotel use, although different.
The present use of the property as a transient hotel is a nonconforming use. Nonconforming uses and structures existing at the time of adoption of local land use zoning ordinances or amendments may continue, pursuant to statutory enactment. N.J.S.A. 40:55D-68.
Nonconforming uses are inconsistent with the objectives of uniform zoning and as such, should be reduced to conformity, quickly, fairly and equitably. Belleville v. Parrillo's Inc., 83 N.J. 309, 315, 416 A.2d 388 (1980).
Nonconforming uses should be restricted, rather than expanded. They may continue, but they may not be enlarged or extended. Hay v. Board of Adjustment of Borough of Fort Lee, 37 N.J.Super. 461, 464, 117 A.2d 650 (App.Div.1955).
A rooming house use where an individual may establish a permanent residence is a different kind of use from a transient hotel use. And so holding, this Court finds the statutory definitions to be of assistance.

N.J.S.A. 55:13A-3(j) defines hotel as a building which contains ten or more units' of dwelling space or has sleeping facilities for 25 or more persons where sleeping or dwelling accommodations are available to transient or permanent guests.
Excluded from the hotel definition, however, are rooming houses or boarding houses as defined in the Act. A boarding house is defined in the Act as a building which contains two or more units of dwelling space arranged or intended for single room occupancy wherein personal or financial services are provided to residents, including any residential hotel or congregate living arrangement. N.J.S.A. 55:13B-3a.
A rooming house is defined in the same Act as a boarding house where no personal services or financial services are provided to the residents.
Excluded from the definition of rooming and boarding house is any hotel,

*476 motel or guest house where a minimum of 85 percent of the units' dwelling spaces are offered for limited tenure only.
Limited tenure is defined as a residence in a rooming or boarding house on a temporary basis for a period lasting no more than 90 days, when a resident either maintains their primary residence at a location, other than the rooming or boarding house or intends to establish a primary residence at such location and does so within 90 days after taking up original residence at the rooming or boarding house. N.J.S.A. 55:13B-3d.
Transient hotel guests generally use the hotel on a limited basis for sleeping purposes and perhaps meals.
A rooming house becomes the home or domicile of the individual occupants. They tend to reside in the premises for longer periods of time and make more use of the premises during those periods, which has a greater impact upon the surrounding neighbors. * * *
The two uses are different. See Irvin v. Township of Neptune, 305 N.J.Super. 652, 702 A.2d 1388 (App.Div.1997), where the Court held that the conversion of a hotel with 33 rooms and two apartments into ten apartments, all within the existing structure, constituted a change in use and looked to the way the Legislature treated the uses in making the Court's determination.
The Appellate Court stated, "An apartment use is totally different from a transient hotel use. The uses are separately treated by statute," citing the same Acts of N.J.S.A. 55:13A-3(j) and 55:13A-3(k).
Here in the matter before the Court, to grant plaintiff's request would be to contravene the principle governing nonconforming uses, as said nonconforming uses are to be reduced to conformity quickly, fairly and equitably. Belleville v. Parrillo's Inc., supra, 83 N.J. at 315, 416 A.2d 388.
The granting of a builder's remedy would grant the plaintiff site specific relief and grant plaintiff affirmative zoning for the property as a rooming house. If the property were to be destroyed by a fire, it would be allowed to be rebuilt as a permitted use.
The Court finds that ... it was not the intention of the Supreme Court in Mount Laurel cases to allow a property owner to bystep the general principles governing nonconforming uses by an automatic grant of a builder's right.
It must be noted that this is a small, 7,000 square foot tract of land, upon which are located two structures, both of which occupy nonconforming uses in close proximity to the other residential structures in the area.
The property is in a residential zone, where most of the structures are one-or two-family homes. The density of Shire's property of a 155 persons per acre is twice the amount of the next highest density for a nonconforming structure in the area.
Shire seeks to increase the density by adding another two unit apartment in the main structure, which would increase the density to 165 persons per acre.
Individuals using the front porch can literally reach out and touch the property line east of the structure.
There have been an increased number of complaints by neighbors by reason of noise and debris arising out of the existing nonconforming use of the structure.
We substantially agree with Judge Gilroy's reasoning and conclusion. On the basis of the facts found and the prevailing circumstances, he was well within his discretion to deny the relief sought by reason of site unsuitability.
None of the principles informing Mount Laurel I and Mount Laurel II or the remedies associated with them suggest that standards and practices of sound land use planning or control may be negated *477 to achieve compliance. To the contrary, as noted by Judge Gilroy, the third criterion for builder's remedy eligibility decrees rather emphatically that sound planning and control is as much the benchmark of Mount Laurel compliance as it is in land use administration generally. See Mount Laurel II, supra, 92 N.J. at 211, 456 A.2d 390 ("The specific location of such housing will of course continue to depend on sound municipal land use planning."), 260, 268 n.32, 456 A.2d 390; In re Township of Denville, 247 N.J.Super. 186, 198-202, 588 A.2d 1248 (App.Div.1991) (Shebell, J.A.D., concurring in part and dissenting in part, at p. 202, 588 A.2d 1248), certif. denied, 127 N.J. 557, 606 A.2d 369 (1992), rev'd on other grounds (with respect to appeal as of right), In re Township of Warren, 132 N.J. 1, 622 A.2d 1257 (1993); Allan-Deane Corp. v. Bedminster Twp., 205 N.J.Super. 87, 115, 500 A.2d 49 (Law Div.1985) ("A review of site suitability relates to the physical appropriateness of the parcel. Such factors as environmental suitability, availability of infrastructure, proximity to goods and services, regional accessibility and compatibility with neighboring land uses may impact upon whether the court finds a parcel suitable for Mount Laurel development.")
From the earliest days, state zoning and planning powers that promote the "highest and best" uses of land have been sustained. See Euclid v. Ambler Realty Co., 272 U.S. 365, 387, 47 S.Ct. 114, 118, 71 L.Ed. 303, 310 (1926); Collins v. Board of Adjustment, Margate City, 3 N.J. 200, 209, 69 A.2d 708 (1949); Oliva v. City of Garfield, 1 N.J. 184, 191, 62 A.2d 673 (1948). In fostering sound land use choices, the states and their political subdivisions are entitled, inter alia, to legislate to avoid any use fairly within the classic metaphor: "a pig in the parlor instead of the barnyard." Euclid v. Ambler Realty Co., supra, 272 U.S. at 388, 47 S.Ct. at 114, 71 L.Ed. at 311.
The pre-existing, non-conforming use concept was developed as an appropriate device for balancing the public interest in sound land use planning and control with the private right to maintain a previously permitted use which, by the passage of time and changing land use patterns, has come to be undesirable in the zone in which it is located. Town of Belleville v. Parrillo's, Inc., 83 N.J. 309, 315, 416 A.2d 388 (1980). By definition, that device permits a currently disapproved-in-the-zone use to continue without significant expansion or substantial change, Lynch v. Borough of Hillsdale, 136 N.J.L. 129, 133, 54 A.2d 723 (Sup.Ct.1947), aff'd, 137 N.J.L. 280, 59 A.2d 622 (E. & A.1948), until the use abates or is abandoned, Town of Belleville v. Parrillo's, Inc., supra, 83 N.J. at 315, 416 A.2d 388 (citing Borough of Saddle River v. Bobinski, 108 N.J.Super. 6, 259 A.2d 727 (Ch.Div.1969)). Continued use and necessary maintenance are mandated, but enlargement or material modification are prohibited. Grundlehner v. Dangler, 29 N.J. 256, 263, 148 A.2d 806 (1959). Thus, the owner or occupant is guaranteed its right to continued use, but is prohibited from changing or improving the property so as to provide for different uses or enhanced returns. Town of Belleville v. Parrillo's, Inc., supra, 83 N.J. at 316, 416 A.2d 388. Nothing, of course, precludes the owner from bringing the property into zoning compliance. See Hay v. Board of Adjustment, Fort Lee, 37 N.J.Super. 461, 464, 117 A.2d 650 (App. Div.1955) (stating that nonconforming uses should be encouraged to achieve conformity "as speedily as is compatible with justice") (citing Rockleigh Borough v. Astral Indus., 29 N.J.Super. 154, 102 A.2d 84 (App.Div.1953), certif. granted, 15 N.J. 591, 106 A.2d 41 (1954)).
Here, given the general land use considerations involved, the municipality and the neighboring landowners are entitled to the likely eventual abatement which the pre-existing non-conforming use concept connotes, especially with respect to a property which deviates as far from presently authorized uses as this one does. Although *478 it would be a mistake to hold as a general proposition, because of the flexibility that is required, that a Mount Laurel remedy may not appropriately employ non-conforming usesor any other reasonable and legally permissible devicesit was no mistake to hold that the conversion and resulting use perpetuation sought here were not consonant with sound land use principles and practices in the circumstances presented.
The remaining issues addressed by Judge Gilroy need not be decided, i.e., the appropriateness, in general, of alternate living plans, including single-room occupancy housing, as Mount Laurel remedies; the circumstances in which the builder's remedy may encompass continuation or expansion of non-conforming uses; the permissibility of converting from one non-conforming use to another; or questions of plaintiff's motivations or good faith. With the determination that the particular use proposed by plaintiff is not suitable for the site involved, these other issues are moot. They are impacted by basic policy considerations with constitutional implications and should not be addressed in the absence of manifest necessity. See Elgin Nat'l Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 670, 21 S.Ct. 270, 272, 45 L.Ed. 365, 375 (1901) (referring to "the settled rule [that courts should] decide no more than is necessary to the case in hand"), abrogated on other grounds, Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). See also Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 346-48, 56 S.Ct. 466, 482-84, 80 L.Ed. 688, 710-12 (1936) (Brandeis, J., concurring); and, e.g., Donadio v. Cunningham, 58 N.J. 309, 325-26, 277 A.2d 375 (1971) ("[A] court should not reach and determine a constitutional issue unless absolutely imperative in the disposition of the litigation."); State v. Salerno, 27 N.J. 289, 296, 142 A.2d 636 (1958) (stating that a constitutional challenge to a criminal statute should be avoided when other grounds are present upon which a judgment must be reversed); In re Adoption of a Child by E.T., 302 N.J.Super. 533, 544, 695 A.2d 734 (App. Div.) (Humphreys, J.A.D., concurring) ("The judiciary should not venture into fields better explored by the Legislature, unless such an excursion is necessary to the disposition of the case."), certif. denied, 152 N.J. 12, 702 A.2d 351 (1997); Hillside Holding Corp. v. Div. of Employment Security, 32 N.J.Super. 57, 63-64, 107 A.2d 717 ("The judicial function must be limited to interpreting and applying [a statute] to the facts of a given case, assuming that constitutional standards and safeguards have been satisfied.")
Affirmed.